# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

DONALD BROWN                                                                          PETITIONER

CASE NO. 4:20-CV-95-BD

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                        RESPONDENT

## ORDER

**I.     Procedural Background:**

**A.  State Court Proceedings**

A jury convicted Donald Brown of second-degree murder in the Circuit Court of Pulaski County, Arkansas. *Brown v. State*, 2019 Ark. App. 36, 1 (2019). The court sentenced Mr. Brown to 15 years in prison and added a ten-year enhancement for committing a homicide in the presence of a child and a five-year enhancement for using a firearm. *Id*. The court ordered the five-year enhancement to run concurrently with the ten-year enhancement; and both enhancements were ordered to run consecutive to the 15-year sentence, for a total sentence of 25 years. (Doc. No. 8-2 at 115-16)

When Mr. Brown appealed his conviction, he argued that the trial court abused its discretion by denying his motion for a mistrial after one of the State's witnesses allegedly made a comment about gangs during her testimony. *Id*. The Arkansas Court of Appeals was unpersuaded and affirmed the conviction. *Id*.

Mr. Brown brought a timely petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. (Doc. No. 8-5 at 1-9) In the petition, he

claimed his trial counsel was ineffective for not calling "key witnesses" to testify to his innocence. (Doc. No. 8-5 at 6) The trial court granted Mr. Brown an extension of time to file an amended petition, but he did not amend his petition. On January 6, 2020, the court denied Mr. Brown's original petition without a hearing. (Doc. No. 8-5 at 11-14, 26-31) Mr. Brown did not appeal.

### B. Federal Habeas Petition

Mr. Brown filed the pending habeas petition with this Court claiming that his trial counsel was ineffective for: (1) advising him not to testify; (2) not calling witnesses to support an alibi defense; (3) failing to investigate and present evidence to contest the State's evidence; and (4) failing to adequately cross-examine State's witness Chamika Rogers. (Doc. No. 1 at 6-16) He also claims that his appellate counsel was ineffective for failing to argue that the case should have been quashed based upon the "inflammatory and prejudicial shirts worn by the deceased's loved ones." (Doc. No. 1 at 18)

Respondent Payne argues that the Court should dismiss Mr. Brown's petition because his claims are procedurally defaulted, and none of the exceptions excusing procedural default apply in this case. (Doc. No. 8 at 12-31)

## II. **Factual Background:**

Damon Wilkins lived with his fiancée Chamika Rogers and her four children when he was shot and killed. The Arkansas Court of Appeals summarized the testimony presented at trial as follows:

> Chamika testified that on the evening at issue, several men, including [Donald] Brown and Chamika's nephew, came to her house. According to Chamika, there were verbal confrontations between Wilkins and both Brown and

her nephew. The men left the scene, and the police arrived at the house shortly thereafter, having been called there by someone who had seen the altercation and reported that Wilkins had pulled a gun on someone. The police spoke with Chamika, and she told them that during Wilkins's argument with her nephew, Wilkins had a gun in his pocket but never pulled it out. The police left the scene.

Later that night, the men who had been there earlier, including Brown, returned to the house. According to Chamika, Wilkins was apologizing to the men and tried to defuse the situation. Then Chamika's sister drove up in a truck and said, "If somebody pulled a gun on my son, I'm going to blow this house up." Wilkins walked to the truck and spoke with Chamika's sister and told her that he never pulled a gun on anyone. Shortly thereafter, a man in a grey Cadillac drove up, exited the car, and tossed a gun to Brown. According to Chamika, these two men proceeded to where Wilkins was standing near the truck and both men shot him multiple times.

Chamika's son, E.R., also testified about the shooting. E.R. testified that before the shooting, Wilkins "kept apologizing, and it didn't work." E.R. stated that he saw a [m]an give a gun to Brown, after which Brown started shooting at Wilkins.

Chamika's daughter, C.R., testified next.

. . . .

She testified:

> When Damon is at my Aunt Tonya's car, I saw another car come up to our house . . . a little short dude by the name of Doughboy jumped out the car. Don did a little hands signal or whatever. And he tossed Don the gun and he creeped around Tonya's truck. And then Damon, he seen Don coming towards him with a gun. His last words was, "Hey, bro, don't do that." And they started shooting him up.

> . . . .

> After Damon had been shot, Donald Brown left. He jumped in the grey Cadillac. To my knowledge, Damon did not have a gun in his hand. He had his in his pocket.

*Brown v. State*, 2019 Ark. App. 36, 2–5 (2019).

## III. Procedural Default:

"[A] state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." *Gordon v. Arkansas*, 823 F.3d 1188, 1196 (8th Cir. 2016) (quoting *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citation omitted)). Procedural default bars federal review if the state court did not hear the claim because the prisoner failed to follow a state procedural rule, *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)); or, if the petitioner failed to fairly present the claim in state court, and a state procedural rule would bar him from bringing the claim if he returned to state court. *Kennedy v. Kemna*, 666 F.3d 472, 480 (2012), *cert. denied*, 568 U.S. 1012 (2012) (a claim is procedurally defaulted if a petitioner failed to raise it in state proceedings).

A habeas petitioner's default can be excused, but only in limited circumstances. The petitioner must demonstrate cause for the default and actual prejudice resulting from the violation of federal law; or that a failure to consider the claims would result in a fundamental miscarriage of justice. *Franklin*, 879 F.3d at 313-14 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Under the cause-and-prejudice standard, cause is established when some objective factor, external to the defense, impeded efforts to comply with the state's procedural rule. *Id.* at 313 (citing *Coleman* 501 U.S. at 753).

Bringing a claim without an attorney is not usually deemed cause to excuse procedural default. *Id.* The Supreme Court, however, has carved out a limited exception. See *Martinez*, 566 U.S. at 1. When a state requires claims of *ineffective assistance of trial*

4

*counsel* to be raised in an initial-review collateral proceeding, as Arkansas does, procedural default will not bar a federal habeas court from hearing a *substantial* claim of ineffective-assistance-of-trial-counsel if, in the initial-review proceeding, the petitioner was not represented by counsel or if counsel in that proceeding was ineffective. *Martinez*, 566 U.S. at 17 (emphasis added).

Mr. Brown asserts that his "state remedies are exhausted" (Doc. No. 1 at 4); but he has procedurally defaulted all his claims. All ineffective-assistance-of-counsel claims must be brought in a state post-conviction petition under Rule 37 of the Arkansas Rules of Criminal Procedure; and, Mr. Brown was obligated to appeal the denial of claims rejected by the trial court in order to exhaust state remedies.

Mr. Brown raised only one claim in his post-conviction (Rule 37) petition; *i.e.*, that his lawyer was ineffective for failing to "call any of [his] key witnesses to testify" to his "innocence." Mr. Brown did not fully exhaust this ineffective-assistance claim because he did not appeal the trial court's denial of his Rule 37 petition. (Doc. No. 8-5 at 6) Accordingly, Mr. Brown must establish cause and prejudice or actual innocence before the Court can address the merits of his constitutional claims.

**A. Cause and Prejudice**

Mr. Brown asserts that he exhausted his state remedies, so he does not specifically address cause or prejudice or actual innocence to excuse his default. The Court, nonetheless, will address both exceptions.

To the extent Mr. Brown might assert that he was entitled to counsel at the post-conviction, initial review proceeding under *Martinez*, and that deprivation of counsel at

5

that proceeding establishes cause and prejudice, that theory fails. The *Martinez* Court did not reverse the rule announced in *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *i.e.*, that there is no constitutional right to an attorney in state post-conviction proceedings. *Martinez*, 566 U.S. at 8. Mr. Brown did not have a constitutional right to counsel; thus, his lack of counsel is not valid "cause" to excuse his default. *Franklin*, 879 F.3d at 313.

Mr. Brown has not come forward with any objective factor external to the defense that impeded his efforts to comply with the state's post-conviction process so as to excuse the procedural default of his claims. Accordingly, the Court need not address prejudice. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

**B.** *Martinez*

The Court may also not apply the *Martinez* exception to any of Mr. Brown's ineffective-assistance claims, either because the claims fall outside the limited *Martinez* exception or because they are not substantial.

To prevail on his ineffective-assistance-of-counsel claims, Mr. Brown must show: (1) that his trial counsel's performance was so deficient that it fell below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney; and (2) that there is a reasonable probability that the outcome would have been different but for the substandard performance of his trial counsel. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Wiggins v. Smith*, 539 U.S. 510, 534 (quoting *Strickland*, 466 U.S. at 694). The Court's scrutiny of counsel's performance is highly deferential; and there is a strong presumption that counsel's

6

conduct fell within the "wide range of reasonable professional judgment." *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014) (citing *Strong v. Roper,* 737 F.3d 506, 517 (8th Cir. 2013) quoting *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006)).

Mr. Brown asserts that his trial lawyers were ineffective for advising him not to testify. This claim is not substantial. Recognizing that Mr. Brown could raise such a post-conviction claim, trial counsel asked the trial court to question Mr. Brown, on the record and out of the jury's presence, about his decision not to testify. Mr. Brown testified under oath that, after discussing the matter with his attorneys, it was his desire not to testify on his own behalf. (Doc. No. 8-2 at 703)

Mr. Brown complains that counsel was ineffective for not calling witnesses to support his alibi defense. He raised this claim in his Rule 37 petition but failed to appeal the trial court's denial of relief. Unfortunately for Mr. Brown, the *Martinez* exception to procedural default does not extend to errors in *appeals* from the initial review collateral proceeding. *Martinez*, 566 U.S. at 16; see also *Franklin v. Hawley*, 879 F.3d 307, 313 (8th Cir. 2018) (holding that the *Martinez* exception does not apply when the petitioner failed to perfect his appeal of the state trial court's denial of relief).

Mr. Brown maintains that his trial lawyer was ineffective for failing to investigate and present evidence to contradict testimony presented by the State. Specifically, he states that if trial counsel had called witnesses to testify: that the t-shirt he wore was white, not red; that his phone was not at the crime scene; that he was right handed; that he drives a Lincoln, not a Cadillac; and that he has a physical disability that prevents him from jumping; the jury might have acquitted him. (Doc. No. 1 at 9-17)

7

This claim is not substantial for several reasons. First, in response to questioning from the trial judge, Mr. Brown stated on the record that he did not wish to call any witnesses in his defense. (Doc. No. 8-2 at 703) In any event, a defense lawyer's decision not to call any witnesses is typically a matter of trial strategy and is presumed to be the product of a reasoned decision-making process. *U.S. v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011). Moreover, Mr. Brown has not come forward with any names of witnesses whom counsel could have located and called to testify. And finally, the evidence Mr. Brown points to goes to the credibility of the testimony the State's witnesses at trial. He has not established that a different trial strategy would have changed the outcome of the trial.

Mr. Brown claims that his trial lawyer was ineffective for failing to adequately cross-examine the State's witnesses. After reading the record, the Court cannot agree. Defense counsel vigorously cross-examined the State's witnesses. Further the extent of a lawyer's attempts to impeach a witness is generally a matter of trial strategy that is left to counsel's discretion. *Dansby*, 766 F.3d. at 835. The claim is not substantial.

Finally, Mr. Brown claims his lawyer in the direct appeal of his conviction was constitutionally ineffective. This claim fails, because the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel. *Davila v. Davis*, __ U.S. __, 137 S. Ct. 2058, 2065 (2017).

Mr. Brown's petition does not raise a substantial claim of ineffective assistance of counsel that would trigger the *Martinez* exception.

## C. Actual Innocence

Mr. Brown generally maintains his innocence; and he may suggest that the procedural default of his federal, constitutional claims should be excused because he is innocent. (#10 at 30-59) To establish a miscarriage of justice adequate to overcome a procedural bar, however, a petitioner must come forward with *new* evidence to support a claim of actual innocence. *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)) (emphasis added).

The Supreme Court has cautioned that "tenable actual innocence gateway pleas are rare," holding that a petitioner, "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 386 (quoting *Schlup,* 513 U.S. at 327). In other words, this Court must decide whether Mr. Brown has overcome his procedural default by presenting "evidence of innocence so strong that the court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316.

To fall under the actual-innocence exception, a habeas petitioner must come forward with "new reliable evidence" that was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324; *Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011), *cert. denied*, 568 U.S. 838 (2012). For evidence to be considered *new*, it must have been *both unavailable at trial and not discoverable through the exercise of due diligence*. *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001)) (emphasis added). *Reliable* evidence may be

9

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. *Kidd*, 651 F.3d at 951–52 (quoting *Schlup*, 513 U.S. at 324).

Mr. Brown has not come forward with any new reliable evidence that would allow the Court to apply the actual-innocence exception to procedural default. He has not attached reliable, scientific evidence of his innocence or affidavits of witnesses that would allegedly testify to his innocence. Further, the witness testimony that Mr. Brown points to in his petition was all available to him at the time of trial.

Even if Mr. Brown could demonstrate that his allegations constitute new, reliable evidence, the allegations are insufficient, in the light of eye-witness testimony presented at trial, for this Court to conclude that no rational juror would have convicted him. In other words, even if Mr. Brown had presented all his "exculpatory" evidence, a rational juror could still have convicted him by crediting the State's witnesses and not believing his evidence and witnesses. See *Dansby*, 766 F.3d at 817 (proffered evidence insufficient to meet actual innocence threshold, because the new evidence was aimed at undermining the credibility of a prosecution witness; and impeachment evidence, "'will seldom, if ever,' make a clear and convincing case that no reasonable jury could believe the core of the witness's account." (quoting *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992)).

IV. **Certificate of Appealability**:

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr.

Brown has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Mr. Brown has not provided a basis for this Court to issue a certificate of appealability. Accordingly, a certificate of appealability is denied.

V. **Conclusion:**

Mr. Brown's claims are procedurally defaulted, and he has not established cause and prejudice or actual innocence to overcome his default. Accordingly, Mr. Brown's petition for writ of habeas corpus (Doc. No. 1) is DISMISSED, with prejudice. A certificate of appealability is DENIED, and his request for bail pending habeas review is DENIED, as moot.

IT IS SO ORDERED, this 13th day of April, 2020.

_____
UNITED STATES MAGISTRATE JUDGE